IN THE DISTRICT COURT OF THE
UNITED STATES FOR THE DISTRICT
OF CONNECTICUT

_____

THE UNITED STATES OF AMERICA

      -vs-                                  3:15CR131 (SRU)

KRISTIAN SAUCIER

_____

## DEFENDANT'S SENTENCING MEMORANDUM IN SUPPORT OF A SENTENCE OF PROBATION

Kristian M. Saucier, by and through his counsel, Tully Rinckey PLLC, respectfully submits this memorandum to assist the Court in fashioning an appropriate sentence pursuant to 18 U.S.C. § 3553(a).

On May 27, 2016, Kristian Saucier pled guilty to Count One of the Indictment charging him with unauthorized retention of defense information, in violation of Title 18, United States Code, Section 793(e). As reflected in the Plea Agreement filed with the Court on May 27, 2016, Mr. Saucier acknowledged he that freely and voluntarily entered into the plea agreement because he was in fact guilty. It is because of his remorsefulness and acknowledgement of responsibility, we respectfully request the Court to sentence to Kristian Saucier to a term of probation as it will satisfy the statutory goals of sentencing and constitute a sentence that is "sufficient, but not greater than necessary." See *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (quoting 18 U.S.C. § 3553(a)).

## INTRODUCTION

Since June 2005, Mr. Saucier has devoted his life and career to the serving our great county in the United States Navy. Kris, as his friends and family call him, loves serving in the Navy

1

and loves serving his country.   Unfortunately, due to a mistake from over seven (7) years ago and some unfortunate circumstances, Mr. Saucier has been put into a scenario where he's at risk of not only losing his freedom and the ability to provide for his family, but his ability to do what he does best, being a proud member of the United States Navy.

On May 27, 2016, Mr. Saucier pled guilty to Count One of the Indictment charging him with unauthorized retention of defense information.  Mr. Saucier, who was a Machinist Mate, took photographs of the inside of classified sections of the *U.S.S. Alexandria*, a *Los Angeles* class nuclear attack submarine on the following dates and times while the submarine was in port in Groton, Connecticut, including: (1) two photos containing Naval Nuclear Propulsion Information classified as Confidential/Restricted Data taken on January 19, 2009, between 3:55am and 4:00a.m. ("the January photos"); (2) two photos containing Naval Nuclear Propulsion Information classified as Confidential/Restricted taken on March 22, 2009, between 1:30 a.m. and 1:31a.m ("the March photos"); and (3) two photos containing Naval Nuclear Propulsion Information classified as Confidential/Restricted Data taken on July 15, 2009, at 12:47p.m. ("the July photos").

The two January photos captured the auxiliary steam plant panel and the reactor compartment viewed through a portal.  The two March photos provided a panoramic array of the Maneuvering Compartment.  Similarly, the two July photos documented the reactor head configuration of the nuclear reactor and a view of the reactor compartment from within that compartment.  Please see attached plea agreement for reference as "Exhibit C."

Mr. Saucier admitted that he knew when he took the pictures in 2009 that they were classified and that he did so out of the misguided desire to keep these pictures in order to one day

2

show his family and his future children what he did while he was in the Navy.  He neither passed the photos or disclosed their contents to any unauthorized recipient nor ever attempted to do so.

## A. **PERSONAL HISTORY**

Mr. Saucier was raised in Cape Coral, Florida and graduated from Mariner High School in 2004.  Mr. Saucier had dreams of pursuing a career in law and attending a military academy. He assisted his grandfather on the family farm and even started his own lawn mowing business at 15, where provided free services to the elderly because they reminded him of his grandparents (Kathleen Saucier Letter, Exhibit A.)   Through his countless awards and accommodations, Mr. Saucier was known as being devoted to his community and the people within it before he even donned a choker.  After high school, Mr. Saucier received a congressional nomination to the U.S. Naval Academy.  Although understanding this was a great honor, Mr. Saucier decided he wanted to enter into active duty with the Navy and begin serving our country.   These anecdotes were just stepping stones to building Mr. Saucier to the man he is today, a man who devoted his life to serving his country for over a decade.   This is further illustrated by the countless letters his family members and friends wrote attesting to Mr. Saucier's strength, selflessness, dedication and spirit. The above-mentioned letters are attached hereto as "Exhibit A."

## B. **FAMILY**

Kristian Saucier, known to his family as "Kris," is a devoted and loving son, husband, father and grandfather.  His wife Sadie, 10-month old Daughter Kassy, step-daughters Ariana and Kelsey, step-son Michael, mother Kathleen and step-father Kevin, all rely on Kris and look to him for emotional support.  He is a devoted family man and his family has been dedicated to him during this troubled time in his life.  Although only 29 years old, Kris has taken to being a

grandfather at a young age as his step-daughter recently had a child.  Please see pictures of Mr. Saucier and his family attached hereto as "Exhibit B."

Further, Mr. Saucier has always treated his Navy brothers like they were his family and they have treated him the same in return.  Mr. Saucier is known for always being there when his fellow sailors are in need, both professionally and personally, and has always got the job done. For example, Mr. Saucier once drove 1600 miles to ensure a fellow sailor's dog was safe and even gave him a place to live when he was going through a tough divorce.  (Charles Gray letter, Exhibit A).   While on the *Alexandria*, Mr. Saucier did not hesitate to take new sailors under his wing and show them the ropes.  He continued being a leader when he began instructing new Navy recruits at the Nuclear Power Training Unit in Ballston Spa, New York.  Mr. Saucier is a man who protects his country, family and friends to the best of his ability and this lapse in judgment should not define Kris for the rest of his life.

## ARGUMENT

### A. Applicable legal principles

Per the attached plea agreement, Mr. Saucier understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by the attached plea agreement.   The total offense level of 26 agreed upon in the plea agreement results in a Sentencing Guideline range of 63 to 78 months of imprisonment, a fine of $25,000 to $250,000 and a supervised release term of one to three years.    However, as the Court is well aware, the Federal Sentencing Guidelines are "effectively advisory." *United States v. Booker*, 543 U.S. 220 (2005).

4

**B.** **A Sentence of Incarceration is Greater Than Necessary to Accomplish the Statutory Purposes in Section 3553(a)**

As noted above, after determining the appropriate Guideline range, the Court must focus on the factors set forth in 18 U.S.C. § 3553(a), and impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in that statute. Application of relevant § 3553(a) factors to this case make clear that a sentence of incarceration is greater than necessary to comply with the purposes set forth in that statute.

1. The nature and circumstances of the offense conduct favor a probationary sentence

Kristian Saucier was 22 years old at the time of his actions in 2009. These acts were wrong, illegal and, in layman terms, silly. His misconduct was real and of a serious nature. However, these actions were not made with any ill-will or bad intent. His actions occurred over seven (7) years ago and he would not have made the same decisions if they were committed today. Furthermore, Mr. Saucier did not share these photos with any other person nor did he intend to distribute them to any person, country or agency that could use them to the injury of the United States.

2. The history and characteristics of the defendant also support a probationary sentence

Kristian Saucer is a first-time offender with an exemplary background. The letters submitted to the Court describe a loyal, dedicated and loving son, husband and father. Mr. Saucier is a hard worker and a patriot. He is a family man and always has been dedicated to help his community, from high school until today. He displays characteristics that every member of the United States Navy should, including Honor, Courage and Commitment and has an exemplary service record. Mr. Saucier has never been convicted of a criminal offense and has

never served a period of confinement. Therefore, there is absolutely nothing in Kristian Saucier's background that justifies, much less requires, a sentence of incarceration.

### 3. A prison sentence is not necessary to reflect the seriousness of the offense, to promote respect for the law or to provide just punishment for the offense.

Kristian Saucier is currently being processed for administrative separation (ADSEP) from the United States Navy by reason of misconduct as a result of his actions associated with the charges in the Indictment. This discharge will likely result in an Other Than Honorable discharge from service. Further, an Other Than Honorable discharge will stigmatize him forever and effectively end his Naval career. Mr. Saucier will no longer be able to do the only thing he has known since becoming an adult, that is being a sailor in the United States Navy. The humiliation and embarrassment of this punishment alone is enough to reflect the seriousness of the offense and promote the respect for the law. Mr. Saucier has already paid a very high price for his misconduct and now bears the shame of being a "felon." The stress of a lengthy criminal investigation, a felony conviction and his eventual discharge from the Navy with an Other Than Honorable discharge is a substantial punishment in of itself.

### 4. There is no need for additional deterrence or to protect public from further crimes by Kristian Saucier

Kristian Saucier is a citizen in good standing and of the highest moral character. He currently reports to Navy Nuclear Power Training Unit in Ballston Spa every day and sits in a room for seven (7) hours a day and understands the consequences of his actions. Mr. Saucier has never committed a crime before and is determined to never do so again. Furthermore, a sentence of confinement will not lead to specific deterrence. Since Mr. Saucier will be no longer be an active duty member of the United States Navy, he will never have access to a submarine, Naval Nuclear Propulsion Information or any other classified information ever again. Further, his

security clearance has been revoked.  Therefore, the ability to take pictures of classified material will be impossible and renders deterrence as an unnecessary factor.  In addition, Mr. Saucier committed the acts in question in 2009, roughly seven (7) years ago, when he was 22 years old. Mr. Saucier has new responsibilities as a father, husband and grandfather, and has grown out of the mistakes he made in his early twenties.  Therefore, at 29 years old, any sentence of confinement will be greater than necessary.

5.  The need to avoid unwarranted sentence disparity compels a sentence of probation

In the case at hand, Kristian Saucier only retained six (6) photographs containing classified information that he took while on the *U.S.S. Alexandria*.  He did not transmit or attempt to transmit any of the said pictures.  Further, Mr. Saucier has no previous criminal history and is a well-respected and decorated Navy submariner.  Outlined below are cases involving individuals who were charged under 18 U.S.C. § 793(e) or charged with crimes substantially similar to Mr. Saucier's case.

First, two members of the United States Navy who served with Mr. Saucier onboard the *U.S.S. Alexandria*, Marc A. Dossantos (hereinafter "Dossantos") and Justin D. Rowan (hereinafter "Rowan"), were caught taking pictures in the same locations of the submarine as Mr. Saucier.  Neither Dossantos nor Rowan, however, were Federally prosecuted, and they only received Naval Non-Judicial Punishments (NJP) as a result of their actions.  Dossantos admitted that on or about January 16, 2011, while standing Shutdown Reactor Operator watch onboard the *U.S.S. Alexandria*, he took photographs of himself while inside the engineering spaces of the submarine; specifically, photographs of himself inside the maneuvering area.  As a result of his actions, Dossantos was found in violation of UCMJ Article 92 and **only received a forfeiture of**

**$560 of pay and a reduction from E-5 to E-4.** Rowan admitted that on or about January 16, 2011, while standing Shutdown Roving watch onboard the *U.S.S. Alexandria*, he took a single photograph of Dossantos inside the engineering spaces; specifically, a photograph of Dossantos inside the maneuvering area. As a result of his actions, Rowan was found in violation of UCMJ Article 92 and **only received a forfeiture of $280 of pay per month for two months.** As such, it would be unfair and unjust for Mr. Saucier to be sentenced to a period of incarceration when other individuals onboard the *U.S.S. Alexandria* received far less serve punishment for essentially the same actions.

In addition, there have been many cases where the Court felt a downward departure of the Sentencing Guidelines was appropriate in scenarios much more extreme than the acts of Kristian Saucier. In *United States v. Lesnik*, 2:08-cr-00679 (C.D. Cal. Dec. 10, 2008) a Defense Department contractor was convicted of unauthorized possession of eleven secret documents and one top secret document in violation 18 U.S.C. § 793(e). (The record in that case shows that the defendant in fact possessed 400 top secret documents.) The judge who sentenced Lesnik did not feel retaining documents without disseminating them or intending to harm the interests of the United States warranted a harsh sentence. The judge further decided that "even if U.S.S.G § 2M3.3 applied, "a 22-level departure would be appropriate under the facts of this case," and **sentenced Lesnik to three years' probation.**

In addition, *Henry Otto Spade*, a former Navy radio operator, was arrested in Mountain Home, Arkansas on November 17, 1988 for the unauthorized possession of two (2) Top Secret documents. One of the documents was a cryptographic key card. Spade, who was discharged from the Navy in April 1988, stole the items while on active duty, but had reportedly made no attempt to sell them to any person or foreign government. While in the Navy, Spade served

aboard the *U.S.S. Midway* and the *U.S.S. Bristol County*.  Charged with one count of espionage, Spade pleaded innocent and was released on $25,000 bond.  Spade faced up to 10 years in prison and a $250,000 fine when convicted, but, on March 14, 1989, he was **sentenced to three months' probation.**[1]

In *United States v. Montaperto*, No. 1:06-cr-257 (E.D. Va. June 14, 2006), Defendant was convicted of retention of classified material and admitted to a seven-year course of communicating top secret classified information to attaches from the People's Republic of China.  The Guidelines range for Montaperto's offense was 63-79 months.  **Defendant was sentenced to three months in prison and three months of home confinement following his guilty plea.**  However, unlike Montaperto who retained the classified "top secret" material and communicated documents to China over a period of seven (7) years, Mr. Saucier only took six (6) photographs of material classified as "confidential/restricted" on three separate occasions over a period of six months and did not send or transmit them to any individual or group.  Therefore, Mr. Saucier should not be sentenced to a period of incarceration and should only be sentenced to probation.

In the case of *Matthew Diaz*, Diaz was an Air Force officer assigned to Joint Task Force Guantanamo Bay (JTF GTMO) as a Deputy Staff Judge Advocate (SJA).  He was convicted under 18 U.S.C. § 793(e) of gathering and disseminating classified materials to an attorney working for the Center for Constitutional Rights (CCR) in New York City requesting the names and information regarding the detainees.  After JTF GTMO denied the attorney's request for the names of detainees, Diaz gathered the names, which were classified, and transmitted the

---

[1] Espionage and Other Compromises of National Security, Defense Personnel Security Research Center, (July 5, 2016, 12:59am), https://fas.org/irp/eprint/esp-summ.pdf

information to the attorney by sending the names to the attorney in a series of Valentine Day cards. **Diaz was sentenced to dismissal from the Navy and a six month period of confinement.** *United States v. Diaz*, 69 M.J. 127, 137 (CAAF 2010).

In another case, *Peter Lee* was a nuclear physicist who worked at key research facilities for more than 30 years, turned himself in to authorities and pleaded guilty on December 8, 1997 to two felony counts, one count under 18 U.S.C. § 793(e) and the other for providing false statements to the government. Dr. Lee admitted that in 1985, while working as a research physicist at Los Alamos National Laboratory, he traveled to the People's Republic of China. During this visit Lee discussed with a group of approximately thirty (30) Chinese scientists the construction of hohlraums, diagnostic devices used in conjunction with lasers to create microscopic nuclear detonations. Prosecutors stated Lee acknowledged that he knew the information was classified. The second charge against Lee concerned disclosures he failed to make in 1997 while he was working on classified research projects for TRW.

Before he traveled to China on vacation, Lee was required to fill out a security form in which he stated he would not be giving lectures on his work. Upon his return, he had to fill out a second form in which he confirmed that he did not give any lectures of a technical nature. However, as Lee later confessed to the FBI, he lied on both forms because he intended to and did, in fact, deliver lectures to Chinese scientists that discussed his work on microwave backscattering from the sea surface. Dr. Lee told the FBI that he disclosed the information because he wanted to help his Chinese counterparts and he wanted to enhance his reputation in China.

According to United States Government sources, Lee did receive compensation for the information he provided to the Chinese in the form of travel and hotel accommodations. The case resulted from an investigation by agents from the FBI's Foreign Counterintelligence Squad. On March 26, 1998, **Dr. Lee was sentenced to one year in a community corrections facility, three years' probation, and ordered to perform 3,000 hours of community service and pay $20,000 in fines.** *United States v. Lesnik*, 2:08-cr-00679 (C.D. Cal. Dec. 10, 2008)

The Defendant in *United States v. Ntube*, 1996 WL 808068 (D.D.C. December 9, 1996), who was charged in a 27-count indictment with violations of 18 U.S.C. §793(e), 18 U.S.C. §793(g) and 19 U.S.C. §641, was accused of transmitting, over the course of 2 years, thousands of documents classified at the "secret" level to African magazines which were not authorized to receive them. **The defendant pled guilty to theft of government property and was sentenced to 6 months incarceration and 1 year supervised release.** Therefore, since Mr. Saucier did not transmit any of the six (6) "confidential/restricted" pictures that he took with his cellular phone, his sentence should be even lower than that of the defendant in the above case. Wherefore, we request that Kristian Saucier be sentenced to probation.

In *United States v. Mehalba*, 03 CR 10343 (D. Mass. Feb. 18, 2005), Mehalba was contracted to support the Department of Defense in Guantanamo Bay. He was convicted of offenses under sections 793(e) and 1001(a) for "abusing his security clearance and taking and retaining hundreds of documents containing highly sensitive, classified information relating to the national defense, mishandling these critical documents for his own purposes, and then lying about it." **As a result, the Court imposed a sentence of twenty (20) months incarceration (17 months' time served plus 3 more months).** However, unlike Mehalba who retained "hundreds" of documents, abused his security clearance and lied about it, Mr. Saucier only took

six (6) photographs containing information classified as "confidential/restricted." Therefore, Mr. Saucier deserves a much more lenient sentence.

In 1992, James F. McGuiness pled guilty to several espionage related offense before a military tribunal, including Sections 793(e) and 793(f)(2), after acknowledging that he willfully retained *311 classified documents* acquired during a previous assignment and took them home where they were not properly safeguarded. **Among other military sanctions, the defendant was sentenced to 2 years confinement.** *James F. McGuiness, Operations Specialist Chief, United States Navy, Petitioner, v. United States Of America*, Respondent., 1992 WL 12074050 (U.S.). Unlike McGuiness, who retained *311 classified documents*, Mr. Saucier only possessed six (6) photographs containing classified materials. Therefore, Kristian Saucier deserves a much more lenient sentence of probation.

In 2000, Timothy Steven Smith was charged with two (2) counts of espionage and two (2) counts of theft and resisting arrest after five (5) classified documents were recovered from his residence. **The defendant pled guilty and was sentenced to 260 days confinement.** See, *United States Of America, Appellee, v. Kenneth Wayne FORD, Jr.*, Appellant, 2007 WL 4618305 (C.A.4). Here, however, Kristian Saucier was not charged with theft. Therefore, he should receive a sentence of probation.

In 2006, Donald K. Keyser pled guilty after having been charged with the unauthorized possession of top secret documents and 2 counts of making a material false statement. In 2007, **the defendant was sentenced to 12 months and 1 day imprisonment and 3 years supervised release.** See, *United States Of America, Appellee, v. Kenneth Wayne FORD, Jr.*, Appellant, 2007 WL 4618305 (C.A.4). In the case at hand, Mr. Saucier acknowledged his mistakes and

wrongdoing during a proffer interview with Government attorneys and FBI personnel taking place in June 2015. Furthermore, the pictures that Mr. Saucier possessed were not "Top Secret." Therefore, Mr. Saucier should be sentenced to probation.

Furthermore, Kristian Saucier's case does not live up to the most extreme scenarios and the higher sentences received under §793(e) and § 3553(a). In *Malki v. United States*, 718 F.3d 178 (2013), between 2003 and 2005, Malki, a civilian translator, worked with U.S. military personnel in Iraq. After two separate tours of duty, Malki was found in possession of four classified documents, despite having previously affirmed that he did "not have in [his] possession or control any documents or material of a classified nature." Malki knew that these documents were in his possession, but he made no effort to return them. In 2008, he was convicted following a guilty plea of retaining classified documents without authorization in violation of 18 U.S.C. § 793(e). **Malki was sentenced to a period of incarceration 112 months. On appeal, the district court lowered it to 108 months**. The extreme rationale for a sentencing of this magnitude is due to the date and place of the alleged misconduct. Kristian Saucier's misconduct occurred on a submarine in the United States, in Connecticut, in 2009. On the other hand, Mr. Malki's conduct occurred during wartime and at the height of the War on Terror in Iraq. Therefore, this case should not be used as sentencing precedent in this case.

Most recently, Democratic Presidential Candidate and former Secretary of State Hilary Clinton (hereinafter "Clinton") has come under scrutiny for engaging in acts similar to Mr. Saucier. FBI Director James Comey (hereinafter "Comey") stated that there was "110 emails and 52 email chains" that were deemed classified on Hilary Clinton's personal servers collected in 2014. Of those emails, 8 of these chains contained "top secret" information, 36 contained "secret" information, and 8 contained "confidential" information. Additionally, 2,000 emails

were later deemed confidential.  Comey stated that "none of these emails should be on personal servers," however, the FBI recently recommended Ms. Clinton not be brought up on any chargers as she lacked "intent."  In our case, Mr. Saucier possessed six (6) photographs classified as "confidential/restricted," far less than Clinton's 110 emails.  Furthermore, Mr. Saucier pled to 18 U.S.C 793(e), which does not require intent.  It only required that he had "unauthorized possession" of the photographs.  Wherefore, it will be unjust and unfair for Mr. Saucier to receive any sentence other than probation for a crime those more powerful than him will likely avoid.

The facts of the present case are akin to numerous cases, cited above, where a sentence of incarceration within the Sentencing Guidelines of 63 to 78 months was not imposed.  Therefore, anything but a downward departure from the Sentencing Guideline would constitute a significant departure from the settled case law and would create an unwarranted disparity in the treatment of the Defendant.

Further, a sentence of incarceration will dramatically impact his family financially.  Since Mr. Saucier will likely receive an Other Than Honorable discharge from the Navy, he will forever be stigmatized.  These incidents will likely cause Mr. Saucier to lose his Veteran's Affairs benefits, his education benefits and his retirement benefits.

Mr. Saucier also suffers from multiple medical conditions, including Post-Traumatic Stress Disorder ("PTSD") which will make it difficult for him to find employment and will cause great difficulty on him if imprisoned.  He is currently participating in individual counseling at the Albany Stratton Veterans Affairs (VA) Medical Center located in Albany, New York.  He meets with Dr. Jennifer Courtney twice a month.  In addition, Mr. Saucier is also participating in

14

psychiatric treatment and counseling on a monthly basis with Neuropsychiatrist, Dr. Beth Abrams of the Stratton VA Medical Center.   He is prescribed Buspar, an antidepressant, Mirtizipine for depression and sleep, Hydroxyzine for anxiety and Xanax for anxiety. *See Presentence Report* ¶ 76.

Therefore, since a felony conviction already creates a barrier in his ability to obtain employment, a sentence of incarceration will create an extraordinary financial burden on his family, will cease any ability for Mr. Saucier to produce income to support them and significantly decrease his ability to recover from his medical conditions.

### C. <u>The Presentence Report</u>

Although we concur with Ms. Gray's recommendation that Mr. Saucier's actions in this case were uncharacteristic and that a sentence within the applicable guideline range is more than necessary to serve the purposes of sentencing, Ms. Gray is misguided in using certain facts and statements in her report and they should not be considered in Your Honor's sentencing determination, as they are unfairly prejudicial, speculative and unsubstantiated.

For instance, the introduction and use of facts regarding Mr. Saucier's handgun in his home is irrelevant as evidence of obstruction of justice. *See Presentence Report* ¶ *36*.   Mr. Saucier was neither under investigation for possession of an illegal firearm nor arrested for possession of an illegal firearm.   The introduction of such facts in the Presentence Report is unfairly prejudicial and unnecessary in determining Mr. Saucier's punishment for his crime of retaining classified photographs.

In addition, the fact that Mr. Saucier deleted his Facebook page for any reason other than to avoid embarrassment or the prying eyes of an ex-girlfriend is mere speculation.   The general

information or knowledge that "Foreign Intelligence Services deploy social media sites, such as Facebook, to target and elicit information from United States Navy sailors and other Department of Defense elements" is not evidence of Mr. Saucier's intent to cover up his mistakes. *See Presentence Report ¶ 43*. The only fact that the deletion of Mr. Saucier's Facebook proves is that Mr. Saucier, in fact, deleted his Facebook. The assumption that he did so in order to share information with foreign agencies, without any other evidence, is unproven, irrelevant and unfairly prejudicial to Mr. Saucier's sentencing determination. Furthermore, there is also mention of an "African Dream" calling found in Mr. Saucier's apartment. *See Presentence Report ¶ 43*. The mere mention of an "African Dream" calling card has absolutely no relevance to the matter at hand. There is no evidence to suggest that this belonged to Mr. Saucier and it is certainly not indicative of an attempt by Mr. Saucier to thwart the efforts of law enforcement.

Ms. Gray continues her report by using more unproven facts, when she uses the time and sequence of the photographs taken as evidence of Mr. Saucier's intent to cause harm. Specifically, the statement, "This suggests that someone viewed the January photographs and directed Mr. Saucier to obtain further photographs of the reactor and propulsion systems of the boat" is an absolutely false statement. *See Presentence Report ¶40*. The rate that Mr. Saucier took the photographs does not suggest that someone directed him to obtain further photographs. The dates and frequency Mr. Saucier took the photographs only proves that he took the photographs at those specific times on those specific dates. There is no evidence that Mr. Saucier was directed by another individual or group to take such photographs and its inclusion in Your Honor's sentencing determination would be severely damaging and prejudicial to Mr. Saucier. Ms. Gray is using unproven and unnecessary facts and conclusions of law drafted by

the Government in her Presentence Report and are unwarranted in determining Mr. Saucier's sentence.

The fact that Mr. Saucier left "CW-2" for more than one hour during his trip to Cancun, Mexico to find an alternative group to go parasailing should be taken on its face. *See Presentence Report ¶26.* Ms. Gray, again, is assuming facts that neither she nor the Government is aware of in determining Mr. Saucier's sentencing. Any assumptions made from these facts, without further proof, are speculation and should not be used in determining Mr. Saucier's sentence.

Therefore, we respectfully request that Your Honor omit these facts when determining a proper sentence for Mr. Saucier.

<u>CONCLUSION</u>

Taking full account of Kristian Saucier's offense conduct, his acceptance of responsibility, his age at the time of the crime (22), his new family, the punishment he has already suffered, and will likely continue to suffer, and the manner in which the Government and Courts have treated similar cases, we submit that the Court should impose a probationary sentence. Such a sentence is sufficient by not being greater than necessary to accomplish the statutory purposes of sentencing and will allow Mr. Saucier to start rebuilding his life and once again become a productive member of society.

He now has a felony conviction and will likely receive an Other Than Honorable discharge from the Navy. A sentence within the applicable guidelines range may be more than necessary to serve the purposes of sentencing, and we respectfully request Mr. Saucier be sentenced to probation.

Dated: August 12, 2016                                Respectfully submitted,
Albany, New York

                                                      DERRICK F. HOGAN, ESQ.
                                                      Pro Hac Vice Bar Id: phv07608
                                                      Attorney for Kristian Saucier
                                                      Office and P.O. Address:
                                                      441 New Karner Road
                                                      Albany, New York 12205
                                                      (518) 218-7100
                                                      dhogan@1888law4life.com