# EXHIBIT A

14 June 2016

Hon. Stefan Underhill
United States District Judge
United States Courthouse
915 Lafayette Boulevard
Bridgeport, Connecticut 06604

Your Honor:

I am writing this letter on behalf of myself and Kris' stepfather, Kenneth Burkhart, in support of our son Kristian Mark Saucier. We urge you to apply the least penalty possible to the crime to which he plead guilty.

Since 1991, I have devoted my life to community service - non-profit, state and federal - as a mental health provider to individuals and communities in crisis, dealing with trauma. For the last 7 years, I have dedicated my service to military members, their families and veterans struggling with PTSD. Through this community service I have had the chance to meet people from all walks of life, all during times of crisis. Kris' stepfather, Kenneth, has also worked all his adult life as a productive member of society. Since his retirement he has devoted his life to supporting others through community service and volunteering, as well as his most recent dedication to military members through his involvement in the development and set up of Samson's Strength Farms and Veterans Ventures, LLC.

I would like to now tell you about my son, Ken's step son, Kris. As a young boy he always wanted to be in the military and loved every summer coming up to visit my family where he had a chance to go to the subbase to see the submarines and hang out with my WWII Veteran father and his veteran buddies- working on the farm and ocean fishing. As a young boy he was always the one that gave his all at school and at home. We would attend parent-teacher conferences and would hear about him foregoing recess to help the teacher set up computers or helping another kid learn how to do something that he was proficient in. He was always a helper and was willing to stand up to others if he felt they were being abused/bullied - the teachers and administrators often called him the "little attorney" because he would advocate for the kids who were weaker than him. He would even stand up for them with the teachers and the principal, often citing the code of conduct or the classroom rules. When 9/11 happened, Kris watched the towers come down in his high school classroom. It was that day he made the decision to join the military and aid in the effort to protect our country. It was all he could talk about and then I told him I didn't want to hear about it anymore as I didn't want my only child being in the military. I found out later he never stopped believing that's what he was going to do. At 15 years old he started his own lawn mowing service. I found out years later from some of his customers many of the times he didn't charge them. When I asked him about it he said it was because they were elderly and they reminded him of his grandparents and he knew they didn't have a lot of money. When he decided to join JROTC in high school I thought it was a good thing because of the structure and discipline of the program. I continued to encourage him to go forward to seek out what he felt were his values and beliefs in this world, what I came to see as being hard work, dedication, and commitment, both to his family and his country. While in JROTC he started a program for kids in a local after school program. He brought other JROTC members from his high school to the elementary school where they interacted with the kids and taught discipline, patriotism and dedication to our country. For this he received a local award, the Do The Right Thing Award. Throughout it all Kris never took the credit as he always talked about the others who went with him. He was quick to put it off as "just the right thing to do." While in JROTC, Kris decided to follow through on his decision to join the military. Your Honor, Kris could've had full scholarships to colleges and universities because of his high GPA and his achievements while in high school, yet he chose to join the military to serve his country and to protect the United States of America. In addition to the opportunities to pursue higher education, Kris also received a congressional nomination to the U.S. Military Naval Academy. At first he considered it, but then one day came home and told us "I don't want to be one of those guys who gets everything handed to them without working for it, no one will respect me, maybe I will go later but first I want to do it the right way." I was devastated but recognized this was just Kris. He never really took the easy way to do things, always had to prove it to himself he could do it "right" and never wanted anyone to think he had it easy.

Since entering the military in 2005, Kris has committed himself to the Navy. From the years of grueling training to become a nuclear mechanic, to years of dedication on a submarine he called his home, Kris was always proud to be an American and a Warrior. He never talked about what he did or where he went, and we didn't ask because we believed in his service and his dedication and recognized the need for discretion. During his time on the USS Alexandria, I would write Kris regularly through e-mail. I always talked about how proud we were of his commitment to keeping us safe as well as his commitment to his country. Kris continued to re-enlist and always believed serving and protecting his country would be his life long career. I had many opportunities to meet buddies from the submarine and one thing that always stuck out were their statements like, "I can always rely on Kris to get the job done," or "No matter what Saucier is there ready." I also remember hearing about his sense of humor. Kris could always make them laugh even in the darkest of situations. One situation relayed to me by a now retired member was "One of the times we thought we weren't going to make it- all of us were pretty rough- they told us all to write an email to our families because it might be the last one- Saucier was making all sorts of crude jokes- pretty disgusting non PC jokes- at some point we all just started laughing, laughing so hard some of us even wet our pants. What I realize now was he helped us through it." Even in this type of crisis Kris took care of others.

I never truly understood what it meant to commit to the military, to military life, until I became the Mom of a warrior and then devoted my life to serving our brave men, women and their families. Over the past 11 years since Kris enlisted and the 7 years I have been serving in the military/veteran community, what I've come to realize is that when you make that commitment, you are some of the bravest men, women and families in the world ever to be known. To give their lives to protect our country, they don't ask for much except we take care of their families while they're gone and we don't turn our backs on them when they return. When they return and they are struggling with the hidden casualties of war such as PTSD, depression, anxiety, the loss of hope and the many physical issues related to serving. It is with great fear some days I speak to my son and hear that same helplessness and hopelessness in his voice. To hear in his voice the loss of pride in himself and what he stepped up to do so many years ago to protect and serve his country, all based on a mistake he made as a young man. Myself and others have told him over and over to be proud of his military service, of his deployments, his defense of his country, OUR COUNTRY. We have continued to stand by him along with many of his shipmates. Kris is a good man, a kind generous human, a loving husband and father and a son I will always feel proud to acknowledge as my own.

Over these last 7 years of what I call a nightmare, I've watched a young, brave man who served his country proudly fall apart. I've watched him suffer from depression, anxiety and PTSD. I've watched him suffer physically from things that have occurred from injuries related to his military service. I've watched my son become just a shell of a man at a time when he should be enjoying his life with his loving wife and infant child. Your Honor, for the past 25 years I've devoted my life to community service. I have worked with all walks of life and all different types of human beings, mostly good people who have made poor choices over and over. Your Honor, Kris is a good man, a good human being and someone who cares for others. He put others before him to include people he's never even met, citizens of this country, and one mistake is now defining his life. What you will hear over and over if you talked to people who served with him is he has dedicated his life to service, to our country and others.

Your Honor, we ask that you have mercy on this young man who has given our country so much of himself and his life. We ask you read the statements written by those who truly know this brave warrior and listen to their words.

With the greatest respect for all you do for our country,

Kathleen Saucier and Kenneth Burkhart

Proud Parents of a US Navy Submariner

June 8,2016

Sadie Saucier
3775 VT Route,313
W, Arlington, Vermont 05250

The Hon. Stefan Underhill
United States District Judge
United States Courthouse
915 Lafayette Boulevard
Bridgeport, Connecticut 06604

Dear judge Underhill,

My name is Sadie Saucier I am Kristian Sauciers wife let me start with how I meet this man and try and make a long story short. I was a volunteer firefighter at roundlake fire department when I first met kristian in 2012 we were paired up at many drills and worked very well together as brothers and sisters you are expected to help each other out the one thing that drew my attention to kristian was he went out of his way to help out with old and new members in the department we spoke and from there I pursued a relationship with him. At that time he was leaving a relationship I went to his home I will say very neat for a single man in the navy and he then came to my home and was introduced to my children. From then on I went as good as I could of hoped. Kristian shared stories with me good and bad I heard about ex wives and how it was a bumpy road as with any relationship but with some of that it made me think if I was doing the right thing All I can say is I found nothing coming out in abuse or lack of being a responsible person he formed relationships with my daughter ariana 12 and son michael 17 and oldest kelsey 21 Kristian moved in with me and my children shortly after our home was very upset by being raided by FBI This caused huge impact on my life and children harassment from neighbors and causing issues at my job. We had no choice to sell my home and move it was very disturbing. You are most likely why did this woman stay? Kristian proved to me in that little time of what a great, honest, loving and caring person he could be and I stuck beside him because I knew and so far so right.I

Scanned by CamScanner

look up to Kristian dealing with this he could lose his freedom and everything we have worked so hard for We married and decided to start a family of our own this was a hard time as well I was high risk and had to see a lot of doctors most every week he was placed under house monitoring and had to get cleared just to see his daughter born this put a lot of stress on us all but we did it the best we all could. He is a big part of my daughter Ariana's life he is a great stepfather to her and she looks up to him as well without her father being in state Kristian goes to her concerts and outings once again hard he could not attend her last day of school graduation due to curfew on the monitor but made sure he praised her as soon as she walked in the door. Kristian has been a positive influence in my son's life as well he wants to join the military and Michael looks up to him. Kristian became a young grandfather as well to my daughter Kelsey's son mason who is a year old now he took to Kristian right away and we are on our second grandchild  this novemember.Our family has grow and this man proves how proud he is and works very hard to support it all even the family he did not help make that I think says alot he puts everyone else before himself everyday even threw a major open hiatial hernia surgery this man staples and all without any thought of his health made sure he supported our family.I am not sure about any of this I don't care about losing my home or material objects at this point All my care is that our family is together kassy is so young and started her first 'DADADA' the other day there are lot more firsts to come for her. Kristian once again is more than a role model mistakes happen in life but sometimes other people get to decide if that mistake outweighs how much people praise or how people view someone I know good behavior and going by the  rules sometimes is not enough to satisfy this. I hope with this letter you see how Kristian is viewed at least to my family He has only ever praised and showed how proud he is to serve he has showed so many how great he is as a new father and a step father most of all he has proved himself as a great husband. I can say if there is ever a point we part ways I could never say anything negative about Kristian holding down a home a family a job and trying to maintain himself and be strong for everyone around him I don't think I could compose myself as well or anyone else I know. Meeting Kristians friends and talking everyone has always said kind words and respect him very much he was young and made a mistake and took responsibility for lit and has been suffering and lost so much for that mistake so far and will carry that with him even after the decision is made. He is a good man and hope I have been helpful to you with trying to make a long story short and despite the negative. This mistake has impacted us all and not only punishes Kristian but all of us. But I believe in him and a positive future for our family.

Sincerely,

2

Scanned by CamScanner

Patrick McClung
1891 S. Sanbay Drive
Port Clinton, OH 43452

June 7, 2016

Hon. Stefan Underhill
United States District Judge
United States Courthouse
915 Lafayette Boulevard
Bridgeport, Connecticut 06604

Dear Judge Underhill,

My name is Patrick McClung and I served alongside Kris Saucier on the USS Alexandria (SSN 757) from October 2007, when Kris reported, until January 2012, when I transferred to my next command. In those 4 years and three months I grew to know all those I served on board with. However, I was a member of the same division as Kris (machinery division), so our relationship was much closer. Kris was the kind of worker you never had to worry about. If there was a job to do, he did it, and he did it well. He poured himself into the Alexandria and gave her all he had. This was in part due to his phenomenal work ethic but mostly, I believe, due to his patriotic spirit. If you look at his forearms you will find identical 12 inch dolphins. These Dolphins make up the Submariner's Warfare device. Kris was extremely proud to serve his country and proud to serve on a submarine. I cannot begin to put into words the mental isolation, unrelenting work hours, and sacrifice of one's family a Submariner must commit to. Believe me when I tell you that it's no small sacrifice. Kris was dedicated to that commitment and performed without hesitation.

Furthermore, the submarine was our home for almost 5 years. We took care of her and she took care of us. Though I do agree that Kris lacked his better judgment in taking those photos, I do not believe that it warrants a penalty as severe as to deprive him from his wife, baby daughter, and family. He has made that sacrifice time and again in the loyal service to his country. I simply can't express how proud I am to call Kris, not only a friend, but my brother in arms. I trust you will devote your utmost dedication in making this decision and that you feel the gravity of your convictions as they will send ripples, of some magnitude, through this young man and his family's life. Thank you for your service to our country and its due process.

Sincerely,

Patrick McClung,
Former United States Submariner

30 May 2016

To whom it may concern:

My name is Stephen Gaetke and I served alongside Kris Saucier on the USS ALEXANDRIA (SSN 757) from 2008 to 2011.   I had the pleasure of being Kris' division officer from 2008-9. Kris was the kind of worker you never had to worry about. If there was a job to do, he did it, and he did it well. He poured himself into the Alexandria and gave her all he had. This was in part due to his phenomenal work ethic but mostly, I believe, due to his patriotic spirit. Kris was extremely proud to serve his country on a submarine. I cannot begin to put into words the mental isolation, unrelenting work hours, and sacrifices submariners make as part of their proud service to their country. Kris was dedicated to that commitment and unrelenting in his patriotism. I simply can't express how proud I am to call Kris a friend and brother in arms. His judgment was certainly flawed, but his character and patriotism remain uncompromised and refulgent.  I trust you will consider this when making difficult decisions about Kris' future.

Sincerely,

Stephen N. Gaetke

LT, USN

Former United States Submariner

Hon. Stefan Underhill

United States District Judge

United States Courthouse

915 Lafayette Boulevard

Bridgeport, Connecticut 06604

My name is Mark Robb and I served alongside Kris Saucier on the USS Alexandria (SSN 757) from when Kris got to the Alex to when he transferred. There is a lot you can say about a person when you serve with them. Standing watch with a person you get to know everything there is to know about them. And Kris and I stood a lot of watch together. He took great pride that he was a sailor. He talked most about home and how his family was prior navy. He was the first one of us to get it tattooed when big navy relaxed the tattoo policy. Kris is the kind of brother I am truly honored to have known and served. On drills he was flawless. He was quick and precise with his actions making sure we recovered and were fully operational. He has metals awarded from the secretary of the navy for his outstanding service.

We all make mistakes. And that was all this is. I made one in 2014 which lead me being separated from the navy. I was investigated by NCIS for having an email on my personal email that contained classified material. I was investigated by NCIS and accepted my charges. I was reduced in rank, fined, and administratively removed from the service. We all make mistakes. It is in our nature.

Kris does not deserve what he is going through. We had two people on the Alex during that time go to captains mast for taking pictures in the engine room. Both were able to stay in. Kris loves his country and was a great brother. If you look at the navy records you will see countless mishandling classified material cases where many people are still in the navy and many more where people were asked to get out. I hope to convey that Kris is a great man who made a great mistake.

Sincerely,

Mark Robb
Former United States Submariner

Marc Robb

Former United States Submariner

Hon. Stefan Underhill
United States District Judge
United States Courthouse
915 Lafayette Boulevard
Bridgeport, Connecticut 06604


Dear Judge Underhill,


My name is MMN1(SS/DV) Michael Boharsik. I am active duty navy and I am a submariner and instructor at Naval Nuclear Power Training Command. I served with Kris on the USS Alexandria from September 2009 to when he left in 2012. Showing up to the boat was very stressful. Kris however took me under his wing and made sure I succeeded. Even though we were in different divisions, I Reactor Laboratories and him Machinery Division. From the start I could tell he was different. He was the go to guy for pretty much anything. I trusted him and I still do today. Whenever we were on watch whilst I was still junior, I felt safe knowing that Kris was above me. His overall character and dedication to the ship and sailors was unmatched. He is the reason how I was able to make it through and become as successful as I am today. He taught me everything I know about the entire submarine. Even outside of work Kris is an outstanding citizen. I lived with him for 2 years. During this era, I got to see the caring family man that we all know and love today. I owe Kris a lot and would love to serve with him again. He is the living embodiment of the Navy's core values of Honor, Courage and Commitment.


Sincerely,

MMN1(SS/DV) Boharsik

Former USS Alexandria LELT

Charles Gray
4123 Core Street PO Box 93
Woodburn, Indiana 46797


The Honorable Stefan Underhill
United States District Judge
United States Courthouse
915 Lafayette Boulevard
Bridgeport,Connecticut 06604


Dear Judge Underhill,

My shipmate, Kris Saucier, is a brother to me. Since the day I first meet him on the USS Alexandria I knew he was a good man. I have seen him grow from a brand new, know nothing guy to become a sought after Qualified First Class Petty Officer in the United States Navy. That in itself has a lot to say about his personality and love for his country. When this investigation started Kris was at Prototype in New York. So even the Navy knows he is a great leader. They chose him to teach the next generation of Nuclear Operators for the Fleet.

I have a lot of stories over the years from things Kris has done but on in particular sticks out in my mind. When we were on board the Alex together we had a high pressure air compressor fail on us. Diagnosis was a full tear down and rebuild. This is not a normal thing to do onboard nor normal to be done by ships company. Kris was not only one of the first guys to take the task head on, he also stayed up during his off going and into his oncoming until I told him to hit the rack. Four short hours later Kris was right back at it for a whole repeat cycle. As a direct result of his hard work and dedication to duty he helped take that compressor from a piece of junk to a fully operational machine in record time. The command thought Kris did such an excellent job that is when they awarded him his first Navy Achievement Award.

Not only is Kris willing sacrifice himself at work for his shipmates this also flows into his pesonel life. He has helped me out in numerous occasions. When I was going through a divorce Kris offered his home without hesitation or reservation. I didn't even ask and the words were already out of his mouth. While I stayed with him he knew I was on edge due to my situation he tried his hardest to make me feel at home. Him or his wife cooked meals with intentions on me eating. Invited me to get togethers with his mom and grandparents. In general made me feel as if nothing was wrong and showed great truth about treating others as you wish to be teated.

He has even gone so far for me as a friend to drive over 1600 miles in a weekend to ensure my dog was safe. I was in the middle of a deployment and the person watching my dog could no longer watch it. When I told Kris this he went to their house. Retrieved my dog and took it to my parents in Ohio. He had never meet my parents before this but has such love for his fellow man he knew I could not safely do what I needed to do out to sea wondering about my dog. So he took it upon himself to make him safe and set my mind at ease.

He shows that same love for his true family. I have seen this man not only work his Navy job but numerous others. All hours of the night and day to make ends meet. He will sacrifice his own body to ensure his wife and newborn daughter have everything they need.

Even as then investigation and trial proceedings have unfolded he has never stopped being a useful member of society. He has not lost faith in humanity or hope in life. I believe it is in the best interest of society to allow him to keep doing such. He is currently serving as a Honorable member of the United States Navy and I do not just call him a shipmate I call him Brother. I do hope my words will allow you to be as lenient as possible with my brother.

Sincerely,

Charles Gray

To whom ever it may concern regarding the Sentencing of Kris Saucier:

My name is Samuel McKennan Daley and I served alongside Kristian Saucier on the USS ALEXANDRIA (SSN 757) from October 2010 to April 2012. In that time Kris and I stood a lot of duty together and I learned very much from him of the risky profession of Submarining. In the years onboard together and since his transfer off the boat, Kris and I formed a bond stronger than that of Shipmates. Kris Saucier is, and I am very proud to say this, one of the best friends I have ever had in my life.

Both in his professional and personal life among friends and family, I can say unequivocally that Kris continuously demonstrates an attitude of selflessness, outgoing energy, and perserverence; but most importantly of all, it his unending drive to improve the well-being of the collective.

1.) He demonstrated these critical attributes of his character before mine and many other people's eyes through his collateral duties in Machinery Division as Quality Assurance (QA) Inspector, Planner, and Workcenter Supervisor he continuously led the efforts at upkeep and troubleshooting if necessary the extensive equipment that the engine room of our submarine relied on to keep our surfaces-to-dives ratio at 1. I'll always remember one stand out moment for him during the incident in which one of the ship's High Pressure Air Compressors utterly failed and that threatened our operations at sea, but Saucier spearheaded the diagnosis and repairs which subsequently turned the situation around and restored our HP air services back to 100%. Furthermore his talents and worksmanship was recognized by the Secretary of the Navy based on the recommendation by our chain of command AT LEAST TWICE in the year and a half that he and I served together.

2.) As I mentioned above, Kris Saucier imparted a lot of valuable knowledge on the junior sailors as they came and qualified Submarine Warfare, it is therefore only a matter counting his signatures on qual cards in order to quantify the varying degree of impact which he had on the improvement of most of the ship's men through his training and teaching efforts. He was also relied upon for his operational proficiency as one of the most senior nuclear mechanics, always knowing "what to do if---" made him invaluable. His high standards for cleanliness and watchstanding was impressive, in fact, his leadership in this aspect trickled down to subordinates and across to other watch sections. On several occasions, he enforced his standard on superior ranking personnel which in-turn served to reset the department standard for watchsection turnovers.

3.) On one occasion he went HUNDREDS of miles out of his way to personally assist me when my vehicle broke down on a trip to see my family in Northern NY. Without asking for any fuel or money, he assisted me with the engine repair at his house and due to the time it took drove me to the base in CT from his home in Saratoga County, NY while my truck was laid up. His service to his family and the efforts in return to support him through the time in which I've known him go beyond any such as I experienced in my own family. For that I've always admired Kris. Bottom

line here is that he comes from good people and make worthwhile contributions to their community in the face of real adversity, and he upholds that tradition. He does not betray it.

I don't believe that any wrong doings of which Kris apparently is being convicted can honestly warrant prison sentences or punitive financial burdens which one anticipates to be the usual civilian criminal courts' way... The Truth is this instance of prosecuting "photography in the engineroom" has happened ON MY SHIP and it was NOT SAUCIER but in fact two other sailors, both in the same department as Kris and myself, both decorated hardworking sailors like Saucier, one of which as of last week was selected to become a commissioned Officer in the Navy. (I can't make this up.) However, at the time, they had done a naughty thing and had covered it up, only being caught red handed had cast them out of the dark. In the end, the matter caused an Nuclear Incident report, lost pay and reduction in rank for both of those men (one of which is now going to be an Officer now). That matter took place in January of 2011, it was resolved by our Captain inside of two weeks. After that photo incident, our chain of command put out to the crew a directive that if there were anyone else that had taken such photos, to get rid of them no harm no foul. It was widely assumed among us in the crew that there were in fact many other photos, and given that there was no massive sweep throughout the crew it became obvious that those with illicit photos needed simply not get caught with them for the matter to be closed. Therefore I imagine that if you performed such a dragnet across the entire crew for old camera phones or computer hard drives that the result would yield a lot more than naked photos of ex girlfriends... The difference between the case then and the one before you today merely rests on the venue in which the matter is being settled. Beyond the scope of any provable notions, Kris Saucier went through years of harassment by law agents with mysteriously little important work to do in order to somehow they could establish him to be a spy. That is ludicrous, wasteful and insulting to any one who've devoted and sacrificed 5 years of their best efforts to support one of our nation's most dangerous defense mission sets. In the other case, which was settled in the Navy way, the matter was discovered, investigated for what it was (with no other trumped up ridiculousness to threaten the accused such as phone tapping or personally following or home raids). Those sailors were treated like men at the time, and by that point they hadn't put as time in as my friend Kris has either. Kris Saucier's case was suspiciously cooked a bit. I believe that based only on my directed experience with the other case like it.

It is Just, Good and Logical to take into consideration the factors of Kris Saucier's character which I, and I pray, many others have laid out to you. For they speak loudly to the ongoing contribution to our common benefit that Kris Saucier has made and will continue to make in the world. It is Fair to assess Kris' last few years being harassed as a suspected criminal, which HE IS NOT, as a major component to his punishment for the actual offense for which he is convicted. It is Right to give deference to his Honorable years of Submarine Service which added up to months if not years of isolation and separation from those one loves and misses.

I am still a member of the ALEXANDRIA to this day and will be here for about another year, but of all the men with whom I've served (approximately 350-400 given the turnover rate over the last 6 years) Kris Saucier is one of the most honorable and reliable. His integrity is not tarnished in my eyes and I will always stand with him and his wife, daughter, and family.

Thank you for your service to our Justice System and the Constitution of which I, Kris and many hundreds of thousands others serve in defense.

Sincerely,



EMN1/SS Samuel McKennan Daley, USN Active Duty

BA SUNY Fredonia '08

e: daleysm@alexandria.navy.mil

Character reference letter

To whom it may concern,

My name is Daniel Sandridge Covington and I served alongside Kris Saucier on the USS Alexandria (SSN 757) from October of 2007 to November of 2009. In those 2 years and 1 month, I grew to know all those I served on board with. Although I was not a member of the same division as Kris, machinery division, I was a member of electrical division, which worked closely alongside machinery division and shared the same physical watch spaces as many of their members, so our relationship was much closer. Kris was the kind of worker you never had to worry about. If there was a job to do, he did it, and he did it well. He poured himself into the Alexandria and gave her all he had. This was in part due to his phenomenal work ethic but mostly, I believe, due to his patriotic spirit. If you look at his forearms you will find identical 12 inch dolphins. These Dolphins make up the Submariner's Warfare device. You see, Kris was extremely proud to serve his country and proud to do so on a submarine. I cannot begin to put into words the mental isolation, unrelenting work hours, and sacrifice of one's family a Submariner must commit to. Believe me when I tell you that it's no small sacrifice. Kris was dedicated to that commitment and performed without hesitation. That submarine was our home for almost 5 years; we took care of her and she took care of us. Though I do agree that Kris lacked his better judgment in taking those photos, I don't believe (and cannot believe) that it warrants a penalty as severe as to deprive him from his wife, baby daughter, and family, not to mention some of his rights. He's made that sacrifice time and again in the loyal service to his country. I simply can't express how proud I am to call Kris not only a friend, but my brother in arms. I trust you will devote your utmost dedication in making this decision and that you feel the gravity of your convictions as they will send ripples, of some magnitude, through this young man (and his family's) life. Thank you for your service to our country and its due process.

Sincerely,

Daniel Sandridge Covington

Former United States Submariner

Hon. Stefan Underhill

United States District Judge

United States Courthouse

915 Lafayette Boulevard

Bridgeport, Connecticut 06604

Dear Judge Underhill:

I am writing this letter to support my friend Kristian Mark Saucier. I ask that you please apply the least possible penalty to the crime that he has plead guilty to.

I am a fisherman and I know that grammar is not my strong suit, but I have to support my friend who was there for me when I needed it.

I first met Kris when we worked together at a Dairy Queen when he was sixteen. Kris was always a responsible co-worker, always on time and doing more than was needed to just get by. He was always someone a felt I could trust. Kris was the first person that I told that I was gay. What he told me stuck with me to this day. He told me, that if it is what makes me happy then I need to own it and to be happy with who I am and that it would never affect our friendship. I learned over the next few months how true a friend Kris was to me as I came out to people and lost friends whom I had known since childhood.

Kris had always expressed a desire to serve his country and not long after graduating high school he signed up for the navy.   He was so excited to be able to join the military and was planning to make it a career. After he got out of boot camp and was stationed in South Carolina for his nuclear mechanic training I moved to South Carolina from Florida to be his roommate for a couple months.

It was tuff with schooling, it was a difficult schedule. Kris just kept focusing on his goals which kept him excited and motivated about life. While we would talk about how hard the schooling was and his classmates, we never talked about what it was he was learning. When his training in South Carolina was over he was moved to Connecticut and I moved back to Florida.

We have kept in touch over the years by phone and through e-mail and occasionally visiting each other on vacations. During that time, he would tell me about the ports he got to visit and how amazing it was going to different places around the world seeing sights that most people only dream about. Kris would always tell me how he loved serving his country and sometimes he would laugh about the beds on the subs saying that he wished they were a little bigger.

Your Honor I ask that you have mercy on my friend Kris. He is a loving husband a father and a veteran, but most of all to me he is a kind man, someone who would give everything that he has to help someone else out even someone different than him. Thank you for your service to our country. I hope that my letter helps you see what kind of man Kris is and has been throughout his life.

Respectfully

Robert Boots JR

*Robert Boots*

6/30/2016

June 28, 2016

Eugene Pitcher
171 France Rd.
Barrington, NH 03825

Hon. Stefan Underhill
United States District Judge
United States Courthouse
915 Lafayette Boulevard
Bridgeport, Connecticut 06604

Dear Judge Underhill,

      I'd like to take some time to tell you about the Kris Saucier that I know. I've known Kris for a little over 8 years now. There are few men I've met who are more hardworking and loyal friends than Kris Saucier is, and I'm proud to have known Kris and call him a friend. I'll start off with how Kris and I know each other.

      Kris and I served together aboard the USS Alexandria. We were both a part of Machinery Division, or 'M-Div' as we called it on the boat. I reported to the boat in February 2008, and Kris had arrived just a few months before me. Kris was one of the first people I met when I walked on board, and we formed a quick friendship. Both of us being 'nubs' as they call new guys on the boat, we worked together to complete our qualifications and qualified at right around the same time together. During that time, Kris and I developed a friendship beyond just coworkers. Kris and I shared many of the same hobbies and interests, and before long we were spending time outside of work together as well. I quickly came to realize that Kris was the kind of friend who would do anything for a friend of his. The kind of person who is completely selfless, and would drop anything he was doing no matter how important it may have been, to help out a friend in need. I witnessed this personally on more than a few occasions. Another thing that you learn very quickly when you meet Kris is that Kris cares very much about his family and would do anything for them as well. Kris was always busy doing projects at the family farm or helping out someone in his family. Although based on the present circumstances under which you see Kris this may be hard for you to believe, Kris is also a patriot. There are few men I've met who love their country more than Kris does. Kris was always so proud to be serving his country; he truly believed it was an honor and a privilege to be a part of the finest military and Navy in the world. So while obviously Kris has made some mistakes, as someone who has known Kris for a long time, I can personally guarantee you that any indiscretions that Kris has committed were not done with malice or ill-intentions. As you may or may not have heard during the course of your duties, there were plenty of other young sailors in the Navy at that time that were caught taking pictures inside the engine room spaces during those times in the Navy. I think almost universally the motivations were probably the same. You see, at the time these were young men, most of them under 23 years old, put in charge of billion dollar warships being powered by one of the most remarkable achievements mankind has ever created.

We all at one point or another stood back and were in awe of the amazing responsibilities we had and the incredible technology we were in charge of. What I am getting at is that I think for any of the young men who took pictures of things they should not have, the motivation for that was generally because they thought it was 'cool' and wanted to have memories of it. I realize that does not excuse the behavior which they knew was wrong, and I never condoned the behavior to any of my friends on the boat, but I hope that you can see the situation from that perspective, and understand that the offense was not committed with bad intentions.

As time progressed on the boat, I began progressing in my career a little faster than some of the guys I had arrived on the boat with, Kris being one of them. By the end of 2009, I had finished some advanced qualifications and ended up in a supervisor role in Machinery division, as well as a supervisory role in the engineering department, and ended up with Kris now working for me on many jobs. This is when I truly started to develop an appreciation for Kris as a worker. I had known all along that Kris was a smart guy, and I had found him to be one of the more skilled mechanical craftsmen I had ever met, but my appreciation for this grew with Kris now working for me. Transitioning into a supervisor role when you have people you are friends with working for you can be very challenging, but Kris always made my job easy. Kris may not have always appreciated it, but whenever I had a difficult job come up, Kris was always one of my go-to guys. I could always depend on Kris to get the job done right the first time, and to get it done quickly. When things were on the line, Kris was always someone I could turn to and know that he'd get the job done. This is also a point at which I further came to admire what a selfless kind of guy Kris was. You see, Machinery Division is a tough place to work on a submarine. Machinery division guys will tell you it's the toughest place to work on the boat, and most people would agree. During my time there, we were always the first ones to arrive in the morning, and the last ones to leave at night. As a supervisor, when we were in home port I generally was at work from 4 in the morning until 7 at night, but my goal was always to make sure my guys worked less than I did. Unfortunately, we had a lot of work to do and not enough guys to do it. We also had schedules to keep, and the boat needed to go underway when the captain said so. So unfortunately, we worked a lot of very late nights. This usually meant that we needed a couple guys to stay late, and we would try to send everyone else home to their families. When these kinds of moments came up, Kris was always one of the first guys to raise his hand and sacrifice himself so that someone else could go home to their loved ones. Most of the time I didn't even have to ask him, he just volunteered before I would even ask for any. If you were to ask me to put my own crew together to go into the fire with, that we were going to be putting our lives on the line and I needed people I could trust, Kris would have been one of the first guys I would pick. For a submariner, I think that is one of the highest praises that you can receive, for someone to trust you when their life is on the line. And in reality, that is what being a submariner is about every day. Even though we thankfully have not lost a submarine in a little over 50 years, the job of a submariner is an inherently dangerous one, and you truly do entrust your life to your shipmates every time the dive alarm sounds. Kris Saucier is one the finest submariners I ever knew and I'm proud to have served alongside him.

I hope that this has served to give you a deeper understanding of the kind of person that Kris Saucier is, the hardworking, supremely loyal, selfless man that his

friends know him to be. I understand that you have a difficult decision to make, and I sincerely hope that something in my words has jumped out at you and will lead you to conclude what I already know, that Kris Saucier is a great man and is more valuable to his family and society out in the world than he is in a cell. Thank you for taking the time to get to know the Kris that I know.

Respectfully,

Eugene Pitcher

Helen Merasco
167 North Brook St
Hampton, CT 06247
July 4, 2016


Hon. Stefan Underhill
United States District Judge
United States Courthouse
915 Lafayette Boulevard
Bridgeport, CT 06604

Dear Judge Underhill,

My name is Helen Merasco. I am writing you on behalf of Kristian Saucier. He is my cousin. Not only is he my cousin, but he is a friend. Maybe one of the best friends anyone could ever have. He is a dedicated husband, father, stepfather, and son. Kris' work ethic has always been something that amazed me. Kris has worked several jobs to make ends meet to support his family. His heart is huge. His willingness to go out of the way to help his family and friends has always been his greatest attribute.

Here is a brief story to show you an example of his kind character. My husband and I had fallen on very hard times. The company that my husband had worked for nearly 15 years had gone out of business. He was laid off, and I was only part-time employed. We had an $1800 a month mortgage we could not make. We became homeless. My husband, our two boys and I needed a place to live. Kris decided to buy a duplex in Hampton to help us. He didn't have to do that. But he did. Not for him, but for me. We lived there for over three years until we got back on our feet. I'm not sure what would have happened to my family if his kindness had not have saved us. I truly believe in my heart that my family would have been broken.

Over the years I have watched Kris grow into an amazing man. His dedication to his family is amazing. His wife, daughter and step-daughter are his whole world. I am so very afraid of what could happen to them without him around.

He has been through so much in the past 7 years. His mental health has suffered, and his physical health also. His family has kept him going, given him faith.

Your Honor, please consider the most lenient of sentences for my cousin. His kind heart has already been through enough.

Respectfully,

Helen K Merasco

Helen K. Merasco

Barry Pittman

10804 Peppersong Dr.

Riverview, FL 33578


Hon. Stefan Underhill

United States District Judge

United States Courthouse

915 Lafayette Boulevard

Bridgeport, Connecticut 06604


Dear Judge Underhill

Kris Sacier was the pinnacle of what I saw in a good man. I had many classes with him at

Mariner high school and often talked with each other. After awhile Kris and I became very close

friends. We enjoyed JROTC and had affluences for future endeavors in the U.S. Military. Krises

attention to detail and high capacity for learning made him an excellent candidate for nuclear

technician school. I remember Kris and I working together on north Captiva he had an excellent

work ethic and often got upset when supplies were not available. After many years of working

together and growing up together Kris became my best friend. His character was so outstanding

and similar to mine we got along perfectly.  Alas it was time to go into the service, I was set to

depart for USCG boot camp as the first of my friends to leave. Kris saw this as an opportunity as

well to join the Navy. Its' all he could talk about when I came home from leave how excited he

was to join. I was excited for him to, Kris had aspirations to stay in the U.S. Navy for 20 years

and to retire. I had not thought about reenlisting at this point but Kris always seemed to have

great ideas so he inspired me to stay in the Coast Guard. After awhile Kris and I were on opposite sides of the continent doing Americas business and I lost contact with Kris for lengthy periods of time due to OPSEC. However, Kris always would call me when he was home and never discussed the mission, I was just happy he was safe and home.

Kris has a great character and would provide the shirt off his back if it would help someone. He also fought for this country and provided to the service as a submariner, a title I could not receive. Please Hon. Stefan Underhill keep my letter in mind for sentencing, Kris is a very good man and a father and I am lucky to call him my best friend.

Sincerely,

HS2 Barry Pittman USCG (ret)

Ryan L. Meldrum
Pace University School of Law
78 N Broadway
White Plains, NY 10603

Hon. Stefan Underhill
United States District Judge
United States Courthouse
915 Lafayette Boulevard
Bridgeport, Connecticut 06604

RE: Kristian Saucier

Judge Underhill,

I truly hope you can find it in your heart to be lenient on a war hero such as Petty Officer Saucier. I served with him for many years on the USS Alexandria (SSN 757). Not only was he the first friend I made onboard the boat, but in many ways, he contributed to my subsequent success.

Kris checked onboard the boat the same day I did, and he immediately hit the ground running. He not only surpassed me, but everyone else with whom we started. He was pinned with his submarine warfare qualification in record time. This meant that he was able to combat any casualty the harsh sea could throw at us. I put my life in his hands more times than I can count and my mother, my father, and my wife owe him thanks for allowing me to come home to them.

Like many of our generation, Kris took foolish pictures. For doing it in an inappropriate place, he deserved to be bumped down one rank. I am sorry to see that this is taking up time in Federal District Court, but I pray that this can be disposed of so as to not dissuade other patriots such as Kris from serving our great country.

Kris represents a rare type of person who is able to put the needs of others above himself. The several rows of medals he wears on his chest show where he belongs. He does not belong in federal prison.

Thank you for your time and consideration,

Ryan L. Meldrum, J.D.
Former United States Submariner

7/22/2016

Scott Nelson
PO Box 552
Monroe, Oh 45050


Hon Stefan Underhill
United States District Judge
United States Courthouse
915 Lafayette Blvd.
Bridgeport, CT 06604


**Dear Judge Underhill,**

I am writing to you in regards to MM1 (SS) Kristian Saucier. I had the great privilege and
responsibility of serving as his first at-sea Chief Petty Officer onboard USS Alexandria in
September 2007 until I transferred in the summer of 2009. Since responsible decisions must
consider the context of a person's actions, and how similar situations have been handled in the
past, it is my desire to provide some of that context and precedent.

I have read other letters which have been written to you earlier than mine, and while I agree
with each and every one of them whole-heartedly, my intention is to present a slightly different
perspective as the person who was directly responsible for his growth and development.
Regarding those letters, I will only comment that it's unfortunate the true depth of his
commitment to the team can't be accurately described on paper. Several of those letters made
reference to his dolphins tattoo's on his forearms. What they failed to mention is that he got
those tattoos before he had even earned the right to wear his dolphins on his chest (A risky
move when you still have to prove yourself in such a testosterone fueled environment. Imagine
a young attorney showing up in your court wearing your robe!). He knew that serving the
nation through submarining was in his blood and his soul before he ever stepped foot on board.

The role of Chief Petty Officer is one that can't really be compared to anything else that I have
experienced outside of the military. The Chief is first and foremost responsible for ensuring the
command is able to accomplish its mission. That means ensuring our equipment is fully
functional and ready for anything, but more importantly making sure that our sailors are. In a
very literal sense, we take on the role of the parents to these young people who more often than
not are away from home for the first time ever. We must ensure each sailor under our purview
is pushed at the right speed professionally, as well as help them develop into responsible adults
in their personal lives during these highly formative years. For Kris, I was immediately

PO Box 552, Monroe, Oh 45050

• • •

impressed the day I met him by how motivated he was to give the boat everything he had. As a former Navy recruiter, I always asked each new sailor why they joined, and he was the only one who ever knew exactly why and would proudly share it with you; that he was proud of his country and just wanted to serve. That he loved the Navy and thought Submarines were the coolest machines in the world. This pride of service would define him early on and directly fed the strong work ethic you read about in others letters. As excited as I was at having such a dedicated and talented individual on my team, I made the mistake of missing some warning signs, and left one of my best people hanging to take care of himself.

The USS Alexandria at that point in time was a highly successful ship. Truthfully, all ships say that about themselves, but after 21 ½ years in the Navy, four submarine tours, and 11 deployments I can say with some authority; we were a successful ship – on paper. Ships success is generally measured by inspections, something we were exceedingly good at. While I can't discuss specific scores, I can say that we were going through an unprecedented string of highly successful inspections the likes of which I've never heard of since. Unfortunately, the men were paying a high price for that success. You see, we were treating our sailors poorly. We worked them too hard, we didn't give them as much time off as we should have, we didn't treat them with the dignity and respect that they deserved, and we never let off. Ever. 84 hour (or more) work weeks while in port were common place. The more success we had, the harder we worked to maintain or improve our reputation. It's was a self-defeating series of events where the pressure to maintain a high level of performance builds and builds until eventually collapsing under its own weight, which it eventually did in spectacular and career ending fashion around the same time that these photos were taken.

The men were showing signs of cracking left and right, but the momentum of the Alexandria juggernaut was too much for us to hold back, so when the cracks started to show, we thought we could patch them up by working harder or by punishing people or making examples of them. Our sailor of the year got a DUI. One of our junior officers collapsed on the deck and quit. Sailors having trouble at home, divorces, our children acting up, unusually frequent occurrences of work controls violations, senior enlisted leadership fired, the list goes on and on. The human pieces of the machine were being pushed past their limits and we all just kept our eyes on the next inspection. Overall I can honestly say this was the most tense and high strung command I have ever seen. Even visitors would remark after leaving about how much tension was in the air on that boat.

Amidst all this pressure, Petty Officer Saucier and others like him were overlooked. They didn't receive the leadership they needed and suffered for it. I eventually did realize that something had gone terribly wrong with Kris. While his dedication to his friends never waned, his

PO Box 552, Monroe, Oh 45050

motivations certainly changed. I sensed that he no longer loved the boat and I knew that he felt let down by the Navy. His expectations had been crushed and it was deeply troubling. Unfortunately I figured it out too late, and transferred at my rotation date, leaving my men behind to continue to struggle, hoping the next Chief could help them better than I could.

It was this environment in which the men felt the command didn't care about them, that Kristian and others like him made poor decisions, but didn't know why they should care about silly rules when the command didn't care about them as men. In that respect, although each man is responsible for his own actions, I believe that we, the leadership own a significant portion of the blame for creating the environment where these men thought this was a good idea.

Before closing, I would also like to briefly discuss the electronic security measures in place at that time in the submarine force. Today, the submarine force tightly controls personal electronic devices on and around submarines, expending tremendous resources to train the crews and visitors and develop policies that work in this complicated environment where security and normal daily functions don't always blend together easily. It's actually quite cumbersome and requires significant resources to maintain a robust program. At the time of these events, we had not yet embraced the security concepts in place today. The security culture in submarines with respect to personal electronic devices was generally lacking in the kind of care for classified information found in other mediums. Each sailor signed a standard form agreeing not to release classified material, and each person was briefed upon check in about local policies, but that's about the extent of it. There was no real discussion of legal ramifications of minor security violations, nor was there any significant enforcement of policy for most minor mistakes. Sailors who were found to be in possession of their phones (not using them) in classified areas or while on watch were typically verbally counseled. Sailors using their phones at inappropriate times or places would typically receive written counseling for a first offense, and consequences would slowly escalate for subsequent offences if they happened. A typical punishment for taking photos in a confidential space has traditionally been a combination of reduction to the next inferior paygrade, possible loss of up to ½ month's pay for three months, possible onboard restriction for up to 30 days, and in the most egregious cases, possible discharge. All of these could also be suspended at the commanding officers discretion for sailors with great potential to overcome the mistake, as was the case with our Sailor of the year who received a DUI.

Your honor, I have no doubt that Kris and the other sailors who acted out the same way or in similar manners as he knew they were doing something wrong. I also believe when you neglect and mistreat any person they tend to act out in order to find something they need, in this case probably as an act of self-empowerment. I am quite sure that there was no intention to violate

PO Box 552, Monroe, Oh 45050

* * *

laws governing the handling of classified information, only to privately take a small piece of power and pride back from a command that systematically abused and neglected its best assets. I'm also sure if he truly understood the possible repercussions, he would have made a better choice. In his mind, the worst case scenario was probably getting busted down a rank and losing some money, not the possible consequences he is facing today.

To close your honor, I truly hope you will consider the context of the environment that led to this mis-step, as well as the history of similar violations by his shipmates and the way that those were handled at the command level, and keep the additional punishment beyond what he has already gone through to a minimum. This is a man who has a lot to offer to society, and belongs in the work force, not in confinement (Actually he belongs in the submarine force, but it seems that opportunity is lost forever). He has paid dearly already for an immature moment of rebellion, and both he and his young family have suffered enough. Please allow him to move on from this event as painlessly as possible.

If you have any questions about this statement, please feel free to contact me for clarification.

Scott Nelson
Chief Machinists Mate, Submarines, Retired
PO Box 552, Monroe, Oh 45050
860-287-1861

Scott Nelson * 4

David J Flounders Sr. US ARMY CPT (Retired)
August 3, 2016

Hon. Stefan Underhill
United States District Judge
United States Courthouse
915 Lafayette Boulevard
Bridgeport, Connecticut 06604

Dear Judge Underhill.

I am writing on behalf of Kristan Saucier.

My name is David and I am a United States Military Veteran – served for over 30 years (Army CPT-Retired) and I am writing regarding Kristian whom I have had the pleasure of knowing since 2009. Kris has been a member of the United States Navy since 2005, following his graduation from high school. All his life, Kris wanted to be in the military and during his time in high school he was involved in Junior Officer Training Course (JROTC). In his senior year he was the Battalion Commander of the school JROTC. He was proud of his service and was selected through Congressional Nomination to enter the US Naval Academy. He spent months discussing his options with veterans he knew, other military members and he decided to join as an enlisted man into the US Navy. Because of his high grades and scores on entrance exams, he was recruited into the nuclear power program of which I am also an alumnus (Class 8403). He successfully completed the nuclear power program and chose to be stationed on a fast attack submarine. Kris served his country on a submarine stationed out of Groton, CT, and his mother, Kathleen, continues to proudly support him in his career. It was during the end of his tour on the USS Alexandra that he went through a very difficult divorce, during which his ex-wife made some serious allegations. As a result of these allegations, Kris has been under investigation for a considerable time.

Kris was determined to be a service-connected disabled veteran and was in the process of being medically retired from the Navy from injuries he incurred while underway on the submarine, including anxiety related to multiple deployments. Due to the investigation, his discharge has been on hold for almost three years. For the past three years he has been struggling with severe medical conditions – related to these injuries, and at times he was refused medical care - they continued to refuse care until Kathleen intervened last year and contacted the VA requesting he be seen by a psychiatrist as well as receive medical care for an untreated issue. He was finally able to have surgery in July and again in December of 2015.

As a Navy and Army Veteran myself, I am very proud to see that the Navy has stood by Kris during these difficult times. Normally, this case would have been handled at the lowest level - his unit. I saw similar as a unit Commander myself. Kris' grandfather, who is 89 years old, served during WWII in the US Navy and he instilled in all of his family the importance of standing up for what is right and being proud to be an American. Other submariners who deployed with Kris have written statements, which state the kind of young man he was when they served with them. Kris was always ready, prepared, got the job done and received awards

**EXHIBIT B**

















































You are my everything





















































































**EXHIBIT C**



**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

| | |
|---|---|
| *RBS Financial Center* | *(203) 696-3000* |
| *1000 Lafayette Blvd 10th Floor* | *Fax (203) 579-5575* |
| *Bridgeport, CT 06604* | *www.justice.gov/usao/ct* |

May 27, 2016

United States District Court
District of Connecticut
FILED AT     BRIDGEPORT
5/27/2016
Roberta D. Tabora, C
By: _____

**BY E-MAIL**

Mr. Derrick Hogan
441 New Karner Road
Albany, New York 12205

United States v. Kristian Saucier
Criminal No. 3:15cr131(MPS)

Dear Attorney Hogan:

This letter confirms the plea agreement between your client, Kristian Saucier (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government" or "this Office") concerning the referenced criminal matter.

**THE PLEA AND OFFENSE**

The defendant agrees to plead guilty to Count One of the Indictment charging him with unauthorized retention of defense information, in violation of Title 18, United States Code, Section 793(e).

He understands that, to be guilty of these offenses, the following essential elements of the offense must be satisfied:

1.     On or about the dates in the Indictment, the defendant had unauthorized possession of documents or information relating to the national defense;

2.     Which information the defendant had reason to believe could be used to the injury of the United States or to the advantage of any foreign nation; and

3.     The defendant willfully retained the same and failed to deliver it to the officer or employee of the United States entitled to receive it.

1

**THE PENALTIES**

This offense carries a maximum penalty of ten years' imprisonment and a $250,000 fine. In addition, under 18 U.S.C. § 3583, the Court may impose a term of supervised release of not more than three years to begin at the expiration of any term of imprisonment. The defendant understands that, should he violate any condition of the supervised release, he may be required to serve a further term of imprisonment of up to two years with no credit for time already spent on supervised release.

The defendant also is subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $250,000.

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on the count of conviction. The defendant agrees to pay the special assessment on or before the date of sentencing unless he establishes an inability to pay on or before the date of sentencing through the financial disclosure to the Probation Office as part of the presentence investigation and report, in which case the defendant agrees to pay it as soon as practicable.

Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572 (h), (i) and § 3612(g).

**THE SENTENCING GUIDELINES**

Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guideline application is other than he anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's recognition and affirmative acceptance of personal responsibility for the offense.

2

The above-listed recommendation is conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under Sentencing Guideline § 1B1.3, and (2) truthfully disclosing to the Probation Office personal information requested, including the submission of a complete and truthful financial statement detailing the defendant's financial condition.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (Sentencing Guideline § 3E1.1); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (Sentencing Guideline § 3C1.1); or (3) constitute a violation of any condition of release. Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw his plea of guilty or takes a position at sentencing, or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility. The defendant understands that he may not withdraw his plea of guilty if, for the reasons explained above, the Government does not make its recommendation or seeks denial of the adjustment for acceptance of responsibility.

Guideline Stipulation

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

| | |
|---|---|
| Base Offense Level (U.S.S.G. § 2M3.3(a)(2)) | 24 |
| Plus: Abuse of a Position of Trust (U.S.S.G. § 3B1.3) | 2 |
| Plus:  Obstruction of Justice (U.S.S.G. § 3C1.1(1)) | 2 |
| Less:   Acceptance of Responsibility (U.S.S.G. § 3E1.1(b)) | - 2 |
| Total: | 26 |

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category I. The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

A total offense level of 26, assuming a Criminal History Category I, would result in a Guideline range of 63 to 78 months of imprisonment, a fine of $25,000 to $250,000 and a supervised release term of one to three years.

The Government and the defendant reserve their rights to seek a departure or a non-Guidelines sentence, and both sides reserve their right to object to a departure or a non-Guidelines sentence. Amongst other arguments, the defendant reserves his right to argue that a departure is warranted under U.S.S.G. Section 5K.2.20 on the basis that the defendant's instant conduct was aberrant.

The defendant expressly understands that the Court is not bound by this agreement on the Guideline range specified above. The defendant further understands that he will not be permitted to withdraw the plea of guilty if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the Government expressly reserves the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

### Waiver of Right to Appeal or Collaterally Attack Conviction and Sentence

The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction and sentence. The defendant agrees not to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. Nor will he pursue such an appeal or collateral attack to challenge the sentence imposed by the Court if that sentence does not exceed 78 months' imprisonment, a three-year term of supervised release, and a fine of $250,000, even if the Court imposes such a sentence based on an analysis different from that specified above. Similarly, the Government will not appeal a sentence imposed within or above the stipulated sentencing range. The Government and the defendant agree not to appeal or collaterally attack the Court's imposition of a sentence of imprisonment concurrently or consecutively, in whole or in part, with any other sentence. The defendant acknowledges that he is knowingly and intelligently waiving these rights. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

4

Information to the Court

The Government reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

## WAIVER OF RIGHTS

### Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right not to be compelled to incriminate himself, and the right to compulsory process for the attendance of witnesses to testify in his defense. The defendant understands that by pleading guilty he waives and gives up those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if he pleads guilty, the Court may ask him questions about each offense to which he pleads guilty, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

### Waiver of Statute of Limitations

The defendant agrees that, should the conviction following defendant's plea of guilty pursuant to this plea agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

## ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily because he is guilty. The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and

5

him (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges his understanding of the nature of the offense to which he is pleading guilty, including the penalties provided by law. The defendant also acknowledges his complete satisfaction with the representation and advice received from his undersigned attorney. The defendant and his undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

The defendant acknowledges that he is not a "prevailing party" within the meaning of Public Law 105-119, section 617 ("the Hyde Amendment") with respect to the count of conviction or any other count or charge that may be dismissed pursuant to this agreement. The defendant voluntarily, knowingly, and intelligently waives any rights he may have to seek attorney's fees and other litigation expenses under the Hyde Amendment.

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving him.

## COLLATERAL CONSEQUENCES

The defendant further understands that he will be adjudicated guilty of each offense to which he has pleaded guilty and will be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Bureau of Prisons or the Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which he is licensed, or with which he does business, as well as any current or future employer of the fact of his conviction.

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of his participation in the offenses which form the basis of the Indictment. After sentencing, the Government will move to dismiss the remaining count of the Indictment against the defendant.

The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, defendant will not be permitted to withdraw his plea of guilty.

## NO OTHER PROMISES

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

DEIRDRE M. DALY
UNITED STATES ATTORNEY
DISTRICT OF CONNECTICUT

JACABED RODRIGUEZ-COSS
ASSISTANT UNITED STATES ATTORNEY
Telephone: (203) 696-3027

VANESSA RICHARDS
ASSISTANT UNITED STATES ATTORNEY
Telephone: (203) 696-3016

The defendant certifies that he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachment(s) with counsel and that he fully understands and accepts its terms.

_____
Kristian Saucier
The Defendant

5-27-16
_____
Date

I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.

_____
Derrick Hogan, Esq.
Attorney for the Defendant

05/27/2016
_____
Date

7

## STIPULATION OF OFFENSE CONDUCT

The defendant Kristian Saucier and the Government stipulate to the following offense conduct that gives rise to the defendant's agreement to plead guilty to Count One of the Indictment:

The defendant used his cellular telephone to take a number of photographs of the inside of classified sections of *U.S.S. Alexandria*, a *Los Angeles* class nuclear attack submarine on the following dates and times while the submarine was in port in Groton, Connecticut, including: (1) two photos containing Naval Nuclear Propulsion Information classified as Confidential/Restricted Data taken on January 19, 2009, between 3:55 a.m. and 4:00 a.m. ("the January photos"); (2) two photos containing Naval Nuclear Propulsion Information classified as Confidential/Restricted Data taken on March 22, 2009, between 1:30 a.m. and 1:31 a.m. ("the March photos"); and (c) two photos containing Naval Nuclear Propulsion Information classified as Confidential/Restricted Data taken on July 15, 2009, at 12:47 p.m. ("the July photos"). The two January photos captured the auxiliary steam plant panel and the reactor compartment viewed through a portal. The two March photos provided a panoramic array of the Maneuvering Compartment. Similarly, the two July photos documented the reactor head configuration of the nuclear reactor and a view of the reactor compartment from within that compartment.

The defendant, who was a Navy Machinist Mate at the time and had a Secret clearance, knew from his training and his specialized work upon the submarine that these photographs depicted classified material and knew that he was not authorized to take the images. The defendant further knew that the photographs could be used to the injury of the United States and to the advantage of any foreign nation. He willfully retained these photographs and failed to deliver them to any officer or employee of the United States entitled to receive it.

On July 16, 2012, the defendant was interviewed by federal law enforcement agents and confronted with the images from his phone. Following this interview, the defendant returned to his residence, where he immediately destroyed a laptop, camera and a memory card. He took these actions to impede the federal investigation into the photographs.

The written stipulation above is incorporated into the preceding plea agreement. The defendant and the Government reserve their right to present additional relevant offense conduct to the attention of the Court in connection with sentencing.

KRISTIAN SAUCIER
The Defendant

VANESSA RICHARDS
ASSISTANT UNITED STATES ATTORNEY

DERRICK HOGAN, ESQ
Attorney for the Defendant

JACABED RODRIGUEZ-COSS
ASSISTANT UNITED STATES ATTORNEY

8